

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>v.<br><br>**JOSHUA JAMES MJONESS,**<br><br>    Defendant. | **CRIMINAL COMPLAINT**<br><br>Case Number:  19-MJ-82-J |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE

On or about September 18, 2019, in the District of Wyoming and elsewhere, the Defendant, **JOSHUA JAMES MJONESS**, transported a firearm in interstate commerce with the intent to commit therewith an offense punishable by imprisonment for a term exceeding one year.

In violation of 18 U.S.C. § 924(b).

### COUNT TWO

On or about September 18, 2019, in the District of Wyoming, the Defendant, **JOSHUA JAMES MJONESS**, transmitted in interstate commerce a communication containing a threat to injure the person of another.

In violation of 18 U.S.C. § 875(c).

### COUNT THREE

On or about September 18, 2019, in the District of Wyoming, the Defendant, **JOSHUA JAMES MJONESS**, knowing he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, knowingly possessed a firearm, namely, a Ruger pistol bearing serial number 336-65325, and the firearm was in and affecting commerce.

In violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

I further state that I am a Special Agent with the National Park Service and that this complaint is based on the following facts:

*(See attached Sworn Statement)*

Continued on the attached sheet and made a part hereof.

_____
Signature of Complainant
JACOB OLSON

Sworn to before me and subscribed in my presence,

September 23, 2019                     at     Mammoth, Wyoming
Date                                                         City and State

HON. MARK L. CARMAN
United States Magistrate Judge
Name & Title of Judicial Officer                Signature of Judicial Officer

## SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT JACOB OLSON
## UNITED STATES v. JOSHUA JAMES MJONESS

1.  I am a Special Agent ("SA") with the National Park Service ("NPS"), United States Department of the Interior. Presently I am assigned to the Washington Office, based in Yellowstone National Park, Wyoming. I have been employed by the NPS as a Special Agent since 2013 and prior to that as a Federal law enforcement officer since 2006. I have received specialized training at the Federal Law Enforcement Training Center ("FLETC"), having completed the Land Management Police Training Program and the Criminal Investigator Training Program. I have attended and instructed advanced training courses in a variety of law enforcement subjects, and have conducted criminal investigations into a variety of offenses.

2.  I have received specialized training regarding criminal investigations through the FLETC. During my law enforcement career, I have participated in numerous investigations involving terroristic threats, disorderly conduct, assault, sexual assault, sexual abuse, felons in possession of firearms, and homicide and attempted homicide. As a result of my training and experience, I have become familiar with the many techniques employed by individuals and organizations that endeavor to further this type of criminal activity.

3.  The facts in this sworn statement come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This sworn statement is intended to show merely that there is sufficient probable cause and does not set forth all of my knowledge about this matter.

4.  I reviewed the reports by Richland County Deputy Nelk and Deputy Chief Ranger Moore and spoke with both regarding the initial events that led to Joshua Mjoness' threatening communications as well as the following details. I also reviewed written witness statements by

Mjoness' wife and her brother. On 09/18/2019 at approximately 1306 Mountain Daylight Time (MDT), Mjoness' wife called the Richland County Sheriff's dispatch in Richland County, North Dakota regarding her husband's threatening communications.

5. Mjoness' wife advised her husband had not been seen since approximately 1500 hours MDT on 09/17/2019. Mjoness had learned of an "emotional affair" his wife had and was distraught over the information. Mjoness claimed he was checking himself into Sanford Behavioral Hospital in Fargo, North Dakota.

6. According to Mjoness' wife, on 09/18/2019 at approximately 1030 hours (MDT), she began communicating with Mjoness, who was asking for more information about the man she had the affair with. Mjoness believed the man worked at a specific office in Boise, Idaho, but did not know any additional information nor what the man looked like. Mjoness requested a picture of the man from his wife. Mjoness also noted to his wife he felt as if he was "drowning."

7. At approximately 1326 hours (MDT), Mjoness' wife called the Sheriff's dispatch again and stated she had just received additional messages from Mjoness. Mjoness had texted his wife at 1258 hrs (MDT) and stated, "His full information, or the entire office in the next 24 hours. Your choice[.]" At 1311 hrs (MDT) Mjoness sent a picture of a silver and black Ruger pistol sitting on his lap, with his vehicle's steering wheel in view, as well as the text, "Up to you[.]" The pistol in the photo was later determined to match a pistol Joshua had purchased in Fargo, North Dakota on 9/16/19. (Based on the time Mjoness entered Yellowstone National Park, discussed below, I believe Mjoness was in the District of Wyoming when he sent these messages to his wife.) During a subsequent telephonic interview with Mjoness' wife, she confirmed the accuracy of the times associated with the received text messages. Mjoness confirmed the information by looking at the text conversation and telling me the time stamp next to each message.

8. At approximately 1441 hours (MDT), Mjoness' wife again called dispatch and advised that Mjoness called her at approximately 1418 hours (MDT). During this same call, speaking with his wife's brother (on his wife's phone), Mjoness told his brother-in-law to have Mjoness' wife send Mjoness a picture of her paramour and his information and only two people would die rather than twenty. Mjoness' brother-in-law later provided a written statement. In his witness statement, he reported the following statements by Mjoness from their conversation: "this is the easiest way out and noting [sic] else would work" and "Tell your sister to send me a picture of [the paramour] and his information. Either two people die or twenty die[.]" The brother-in-law also reported Mjoness calling him at 1507 hrs (MDT) and asking where he and his sister were currently located, but the brother-in-law chose not to tell him.

9. On 9/21/19, I spoke with the brother-in-law again and confirmed the quotes he had put in the statement. The brother-in-law also noted that Mjoness' behavior was extremely out of character and he had never heard him like that before. The brother-in-law mentioned he thought Mjoness "seemed like he was drunk or on drugs" based on his interaction with him over the phone. The brother-in-law also confirmed that he and his sister were located in North Dakota during the time they received the phone calls from Mjoness.

10. At 1442 hours (MDT) on September 18, 2019, Yellowstone National Park dispatch received a telephone call from Deputy Steve Nelk of the Richland County (North Dakota) Sheriff's Department, who advised them of the ongoing investigation regarding Mjoness and his wife.

11. Deputy Nelk, in coordination with his dispatch center, had initiated a request with the cellular carrier to obtain cell site location information ("CSLI") which showed the cellular telephone that had been used by Mjoness to be active and located within the boundaries of Yellowstone National Park.

12. Dispatch had broadcasted a "be on the lookout" message to on-duty patrol units on the east and north sides of the park, along with a description and license plate number of a vehicle that Mjoness would be likely operating.

13. At 1452 (MDT), Yellowstone dispatch received another call from the Richland County Sheriff's Department stating another CSLI "ping" showed the cell phone belonging to Mjoness was currently located in the area of Pelican Creek near or on the East Entrance Road within the boundaries of Yellowstone National Park.

14. I reviewed Supervisory Ranger Klint Powell's report and learned of his role in identifying, detaining and arresting Joshua Mjoness. At approximately 1505 hours (MDT), Supervisory Ranger Powell located a vehicle matching the description in the Canyon Junction area, northbound on the Grand Loop Road. At 1534 hours Powell advised that he and his backup officers were initiating a traffic stop of the matching vehicle at the Old Buffalo Picnic Area within Yellowstone National Park. At 1539 hours Ranger Powell detained Joshua MJONESS and advised a handgun, ammunition, and two loaded magazines had been located. The handgun located matched the handgun in the photograph sent to Mjoness' wife.

15. At 1550 hours (MDT), Ranger Powell advised he had located marijuana and additional evidence indicating Joshua MJONESS may have been driving under the influence. As well as the physical evidence, rangers on scene detected an odor of alcohol emanating from Mjoness' person. Mjoness was arrested at that time for driving under the influence.

16. At approximately 1610 hours (MDT) on September 18, 2019, I received a call from National Park Service Supervisory Ranger Richard Moore asking me to assist with an interview of Joshua Mjoness. At approximately 1705 hours, I met Rangers Marc Eckert and Dan Kowalski at the front entrance of the Justice Center with Joshua Mjoness in custody. I asked Mjoness if he wanted to

take off his restraints and he said he did not. Mjoness stated, "I either want to see a physician or lawyer. You're going to do it now or you're not going to speak to me." Mjoness went on to say, "If you let me out of these handcuffs I'm going to hurt myself." I responded by asking how he would hurt himself and he stated, "I'm going to kill myself." I asked Joshua Mjoness how he was planning to do that and he said, "Any way possible."

17. I reviewed Supervisory Ranger Schwartz's reports and learned of his role in and details associated with searching Joshua Mjoness' vehicle. During the search of Mjoness' vehicle, a Toyota Rav4, multiple pertinent evidentiary items were located:

  a. A receipt for a handgun and ammunition from Scheels, a sporting goods store in Fargo, North Dakota, was located in the vehicle. The handgun was purchased for $349.99, and a box of 50 rounds of 115 gr, 9mm Luger ammunition was purchased for $10.99. The receipt displayed a purchase date and time of 9/16/19 and 1:56 pm (MDT).

  b. A Ruger handgun and magazine were located on the dash of the vehicle. The loaded magazine, containing 16 rounds of 9 mm ammunition, which had been removed from the firearm, was placed on top of a Yellowstone National Park entrance pass on the driver's side of the dash as well. An additional loaded magazine, containing 9 rounds of 9 mm ammunition, was found in a Ruger brand hard-sided pistol case. On the passenger seat was an additional single 9mm round. In the driver's side door storage pocket an additional single round was found. In the passenger side door was the remaining 23 rounds of a 50 round box of Fiocchi brand 9mm Luger ammunition. The total of all 9 mm rounds of ammunition recovered account for the purchased 50 round box of Fiocchi 9 mm ammunition. Based on where the single round, the

magazines and the firearm was found, I believe Mjoness cleared the firearm of the magazine and chambered round, between his legs and near his feet, before placing it on the dash during the vehicle stop. Prior to the stop, I believe the firearm was probably loaded and chambered.

c. As noted above, a Yellowstone National Park entrance pass was also located during the vehicle search. The pass was located on the driver's side dash of the vehicle, under the loaded Ruger ammunition magazine. The Park entrance pass showed a date and time of 9/18/19 1352 hrs (MDT). These entrance passes are provided to all people who stop and purchase entrance passes into Yellowstone National Park at the different entrance stations. The time and date displayed on the receipt show when the visitor paid for the pass and entered the park. The receipt also indicates the amount of the transaction and which entrance location the transaction occurred. The receipt found in Mjoness' vehicle displayed the East Entrance Station of Yellowstone National Park. The East Entrance Station is located approximately 53 miles west of Cody, Wyoming.

d. Multiple evidentiary items associated with alcohol and marijuana were located. An empty 16-ounce can of Drekker Brewing Co. "Techno Viking" beer (4.5% abv) was located on the passenger floorboard. A nearly empty 750 ml plastic bottle of Evan Williams Kentucky Bourbon was also found on the passenger side floorboard. Located on the ground, near the driver's side door, a "hitter box" and "one hitter" were located. A "hitter box" is a common piece of paraphernalia used to store marijuana and a "hitter." The "hitter" is a common piece of paraphernalia used for smoking marijuana. In the "hitter box" was a trace amount of green leafy substance, and the "hitter" contained burnt residue. Both the green leafy substance and the residue field-

tested positive for marijuana using the field test presumptive kits. In addition, according to Ranger Eckert, Mjoness told him (Eckert) that his marijuana fell on the ground when he (Mjoness) stepped out of the vehicle.

e. Three medications prescribed to Mjoness were also located in the vehicle and left with Mjoness' property rather than submitted to evidence. Those medications consisted of Sertraline (Sertraline is a Selective Serotonin Reuptake Inhibitor and is commonly referred to as Zoloft), Cyclobenzaprine (a muscle relaxer) and Methocarbamol (a muscle relaxer).

18. On 9/20/19, I contacted ATF Special Agent Matthew Wright regarding the Ruger handgun. I provided Wright with the make, model, and serial number. Wright confirmed the firearm had been manufactured in Prescott, AZ.

19. On 9/21/2019, I contacted the Scheels sporting goods store in Fargo, North Dakota identified on the receipt for the handgun and ammunition found in Mjoness' vehicle. I spoke with a representative in the firearms department who confirmed the receipt found in the vehicle during the search correlated to the Ruger semi-automatic handgun found in the vehicle as well. The Scheels representative confirmed the serial number on the handgun as well as the owner and the fact he purchased the firearm at that store. The serial number was 336-65325.

**END OF SWORN STATEMENT**